IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SANJEEV SHARMA, | : | |
|     Plaintiff | : | No. 1:25-cv-00088 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| NORFOLK SOUTHERN RAILWAY | : | |
| COMPANY, NORFOLK SOUTHERN | : | |
| CORPORATION, and JOHN DOE | : | |
| CONDUCTORS, #1–10, | : | |
|     Defendants | : | |

**MEMORANDUM**

Before the Court is a motion to dismiss Plaintiff Sanjeev Sharma ("Plaintiff")'s claim for punitive damages filed by Defendant Norfolk Southern Railway Company ("NSRC") and Norfolk Southern Corporation ("NSC") (collectively "Defendants").[1] (Doc. No. 5.) For the reasons that follow, the Court will deny Defendants' motion.

**I.   BACKGROUND**

    **A.   Factual Background**[2]

This case arises out of a collision between a tractor trailer and a train. Plaintiff avers that he is an adult individual who at the time of the crash resided at 1117 Fairmont Avenue, Fairmont, West Virginia 26554. (Doc. No. 1-1 at 8 ¶ 1.) Plaintiff's complaint asserts that Defendant NSRC is a foreign business entity with a principal place of business in Virginia, and can be served via its registered agent Corporation Service Company, 2595 Interstate Drive #103,

---

[1] The other Defendants are fictitious Defendants "John Doe Conductors #1–10."

[2] The factual background is drawn from Plaintiff's complaint (Doc. No. 1-1), the allegations of which the Court accepts as true for purposes of the pending motion to dismiss. See Kedra v. Schroeter, 876 F.3d 424, 434 (3d Cir. 2017).

Harrisburg, Pennsylvania 17110. (Id. at 9 ¶ 2.)[3] Plaintiff asserts that Defendant NSC is a foreign business entity and can be served via its registered agent C T Corporation System, 600 North 2nd Street, Suite 401, Harrisburg, Pennsylvania 17101. (Id. at 9 ¶ 3.)[4] Per Plaintiff's complaint, Defendants are registered to conduct business in Pennsylvania, and "regularly and systematically conducted and continue[] to conduct business in the Commonwealth of Pennsylvania, including the County of Philadelphia, of which it derives significant income." (Id. at 9 ¶¶ 4–5.) Defendants John Doe Conductors #1–10 "are unknown fict[it]ious individuals, and/or business organizations responsible for operating, conducting, moving, managing, supervising, controlling, advising, and/or servicing the train involved in the herein described crash." (Id. at 9 ¶ 6.)[5]

Plaintiff avers that, on or about July 10, 2022, at or around 9:30 p.m., he was operating a 2015 International Prostar tractor trailer (hereafter "tractor trailer") at the Norfolk Southern Rail Yard (hereafter "Rail Yard") located at 3652 Industrial Road, Harrisburg, Pennsylvania. (Id. at 9 ¶ 8.) Plaintiff maintains that NSRC and/or NSC owned and operated the Rail Yard. (Id. at 10

---

[3] In their notice of removal, Defendants claim that Plaintiff "mistakenly states that NSRC has a principal place of business in Virginia." (Doc. No. 1 at 3 ¶ 15 n.1.) Defendants state that they are both incorporated in the state of Virginia and their principal places of business are in Atlanta, Georgia. (Id.) Therefore, for purposes of diversity jurisdiction, Defendants maintain that they are citizens and residents of the states of Virginia and Georgia. (Id. at 3 ¶ 15.)

[4] See supra note 3.

[5] Plaintiff alleges that John Doe Conductors #1–10, "was/were conductor(s) and employee(s) and/or agent(s) of [NSRC] and/or [NSC], and was/were the conductor(s) for a [NSRC] and/or [NSC] train involved in the crash." (Doc. No. 1-1 at 10 ¶ 10.) Plaintiff avers that NRSC and/or NSC are vicariously liable for the tortious acts and/or omissions of John Doe Conductors #1–10 because John Doe Conductors #1–10 were "agents, servants, workmen and/or employees" of NRSC and/or NSC and "were acting within the course and scope of their authority and employment for and on behalf of said Defendants(s). (Id. at 10 ¶ 14.) Plaintiff also states that "[a]ll acts alleged to have been done or not to have been done by defendants herein were done or not done by the defendants, their agents, servants, workmen and/or employees acting within the course and scope of their employment and authority for and on behalf of said defendants." (Id. at 11 ¶ 17.)

2

¶ 9.) Plaintiff alleges that he was lawfully operating the tractor trailer at the Rail Yard in connection with his employment as a tractor trailer operator. (Id. at 10 ¶ 11.) Plaintiff avers that the Rail Yard contained a railroad grade crossing where train tracks intersect with the roadway, and that NSRC and/or NSC owned, operated, inspected, and maintained the Rail Yard's railroad grade crossing (hereafter the "Railroad Crossing"). (Id. at 10 ¶¶ 12–13.) Plaintiff also asserts that NRSC and/or NSC "was the owner, possessor, maintainer, inspector, in control of, and responsible for safety" at the Rail Yard and the Railroad Crossing. (Id. at 11 ¶ 15.) Plaintiff alleges that the Railroad Crossing is controlled by a stop sign regulating the flow of vehicular traffic over the railroad track, and that he approached the Railroad Crossing and stopped at the stop sign. (Id. at 11 ¶¶ 16, 18.) He asserts that, at the time, a train owned and/or operated by NRSC and/or NSC "was stopped on the train tracks with the rear of the train located approximately twenty (20) feet away from the [Railroad Crossing]," and "did not have any lights or signals activated." (Id. at 11 ¶¶ 19–20.)[6] Plaintiff avers that "[a]fter assuring the tracks were clear, Plaintiff proceeded over the [Railroad Crossing]," and as he did so, "suddenly and without warning, [the train] reversed on the tracks, striking the rear of Plaintiff's trailer." (Id. at 11 ¶¶ 21–22.) He asserts that the impact to the trailer "caused the truck and trailer to flip over causing significant injuries." (Id. at 12 ¶ 25.)

---

[6] Plaintiff's complaint avers that:

> 23. At all times pertinent hereto, there were not any activated lights, signals, warnings or individuals present at the aforementioned railroad crossing to alert, communicate or otherwise indicate the sudden movement of the aforementioned train to warn vehicles of the danger of an approaching train, or prevent vehicles from entering the aforementioned crossing when a train is approaching.
>
> 24. Upon information and belief, the train level crossing signals were not in operation.

(Doc. No. 1-1 at 12 ¶¶ 23–24.)

3

Plaintiff alleges that, "[a]s a direct and proximate result of the negligence, carelessness, and recklessness of Defendants," he suffered serious and permanent injuries as well as loss of everyday pleasures, embarrassment and humiliation, and various expenses for medical treatment. (Id. at 12–13 ¶¶ 26–32.)[7]

---

[7] Plaintiff describes his injuries and damages as follows:

> 26. As a direct and proximate result of the negligence, carelessness, and recklessness of the Defendants, as will be set forth at length below, Plaintiff suffered serious and permanent injuries, including, but not limited to:
>
>    a. Left shoulder injury;
>    b. Cervical injury;
>    c. Cervical radiculopathy;
>    d. Thoracic injury;
>    e. Thoracic radiculopathy.
>
> 27. As a result of the aforementioned injuries due to the negligence of the Defendants, Plaintiff sustained physical pain and suffering, all of this have required or will require medical treatment including a surgical procedure on his left shoulder.
>
> 28. As a result of the aforementioned injuries due to the negligence of the Defendants, Plaintiff sustained a loss of everyday pleasures and enjoyments of life and may continue to suffer the same for an indefinite period of time into the future.
>
> 29. As a result of the aforementioned injuries due to the negligence of the Defendants, the Plaintiff suffered embarrassment and humiliation, and may continue to suffer the same for an indefinite period of time into the future.
>
> 30. As a result of the aforementioned injuries due to the negligence of the Defendants, the Plaintiff has been obligated to expend various sums of money and incur various expenses for medical treatment and may be obligated to do so into the future.
>
> 31. As a result of the aforementioned injuries due to the negligence of the Defendants, the Plaintiff has suffered and may continue to suffer in the future a loss of wages and earnings, and an impairment of his earning capacity/ potential.
> 32. At all times relevant hereto, the Plaintiff acted in a safe, prudent and reasonable manner and in no way contributed to his injures or damages.

(Doc. No. 1-1 at 12–13 ¶¶ 26–32.)

B.     **Procedural Background**

On July 23, 2024, Plaintiff filed a complaint against Defendants in the Court of Common Pleas of Philadelphia County, Pennsylvania. (Doc. No. 1-1 at 5–16.) Plaintiff's complaint alleges the following claims: negligence by NSRC (Count I); negligence by NSC (Count II); negligence by John Doe Conductors #1–10 (Count III); and vicarious liability of NSRC and NSC for the actions of John Doe Conductors #1–10 (Count IV). (Doc. No. 1-1 at 13–25 ¶¶ 33–60.) As to each claim, Plaintiff requests judgment in his favor together with all damages allowed, including punitive damages. (Id.)

On December 5, 2024, Defendants filed a Notice of Removal to the United States District Court for the Eastern District of Pennsylvania ("Eastern District of Pennsylvania") on the basis of diversity jurisdiction. (Doc. No. 1 at 2–8.) Thereafter, on December 12, 2024, Defendants filed a motion to dismiss Plaintiff's request for punitive damages with a supporting brief (Doc. Nos. 5, 5-1) and an answer to Plaintiff's complaint (Doc. No. 6). On December 26, 2024, Plaintiff filed a brief in opposition to the motion. (Doc. No. 8-1.) Defendants did not file a reply brief.

On January 14, 2025, the presiding judge in the Eastern District of Pennsylvania held a pretrial conference with the parties. (Doc. No. 11.) As a result of this conference, the presiding judge transferred this action to this Court pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses.[8] (Doc. No. 12.) Having been fully briefed, Defendants' motion to

---

[8] The Order transferring this case notes the following:

> Pursuant to 28 U.S.C. § 1404(a), for the convenience of the parties and witnesses, a district court may, in the interest of justice, transfer a case to a district where it

dismiss Plaintiff's claim for punitive damages is ripe for disposition.

## II.     LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 312 (3d Cir. 2010).  The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of

---

could have been brought. Here, that district is the Middle District of Pennsylvania.

Venue is proper in a judicial district where a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(b)(1) and (2). Plaintiff resides in West Virginia. None of the events giving rise to the plaintiff's claims occurred here. Plaintiff's claims are based on events that occurred in Harrisburg, Pennsylvania. Witnesses are there as well. Harrisburg is located within the Middle District of Pennsylvania, where the defendants are subject to personal jurisdiction.

See (Doc. No. 12 at 1 n.1).

pleading." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. See id. The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" See Iqbal, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit ("Third Circuit") has identified the following steps a district court must take under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 679).

### III. DISCUSSION

As noted supra, Plaintiff's complaint alleges negligence (Counts I through III) and vicarious liability (Count IV) claims. (Doc. No. 1-1.)[9] Defendants seek dismissal of Plaintiff's

---

[9] For each claim, Plaintiff concludes with the following prayer for relief:

> **WHEREFORE,** the Plaintiff, Sanjeev Sharma, hereby respectfully requests this Honorable Court to enter a judgment in his favor together with all damages allowed, including punitive damages, costs of suit and other relief as this Honorable Court deems just and proper . . . .

See (Doc. No. 1-1 at 16, 20, 22–23, 25) (capitalization and formatting in original).

7

request for punitive damages, arguing that Plaintiff fails to allege sufficient facts to sustain his claim for punitive damages against Defendants as required under Pennsylvania law. (Doc. No. 5-1 at 8.) Defendants claim that the factual allegations in Plaintiff's complaint "fall short of establishing the 'something more' than ordinary negligence that is required to plead a cognizable claim for punitive damages under Pennsylvania law." (Id. at 11.) Based on this, Defendants contend that the Court should strike Plaintiff's allegations of "recklessness," "reckless conduct," and "outrageous conduct" from Plaintiff's complaint. (Id. at 11–12.)

In response, Plaintiff argues that his complaint contains more than a sufficient factual basis to put Defendants on notice of the claims being asserted. (Doc. No. 8-1 at 4.) Plaintiff notes that he "specifically alleges 'recklessness' on the part of [NRSC] and gives an exhaustive list of alleged actions or failures to act." See (id.) (citing Doc. No. 1-1 at 14 ¶ 42). He maintains that "Defendants are more than capable of understanding the nature of the claims being asserted against them so as to formulate a proper defense in this action." (Id.)

In Pennsylvania,[10] "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others" and "must be based on conduct which is malicious, wanton, reckless, willful, or oppressive." See Feld v. Merriam, 485 A.2d 742, 747–48 (Pa. 1984) (internal quotations omitted). To be successful, "a punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." See Hutchison v. Luddy, 870 A.2d 766, 772 (Pa. 2005). Although "punitive damages are

---

[10] As a federal court sitting in diversity, the substantive law of Pennsylvania applies to the instant case, see Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938), and the parties agree that Pennsylvania law applies, see (Doc. Nos. 5-1 at 8; 8-1 at 3–4).

an extreme remedy available in only the most exceptional matters," see Phillips v. Cricket Lighters, 883 A.2d 439, 445 (Pa. 2005) (internal quotations omitted), at the motion to dismiss stage, a court need only decide whether the plaintiff has "plausibly alleged" facts that give rise to a punitive damages award, see Dragone v. Pew, 621 F. Supp. 3d 561, 567 (E.D. Pa. 2022) (interpreting Pennsylvania law) (denying a motion to dismiss punitive damages in a motor vehicle accident case in which the plaintiff "plausibly alleged" that the defendants "knew their conduct risked harming others, like [the plaintiff], and acted in conscious disregard of that risk").

Upon consideration of the complaint, the parties' briefing, and relevant authority, and taking all allegations in the complaint to be true, the Court finds that dismissal of Plaintiff's request for punitive damages would be premature at this stage.  First, Plaintiff's allegations are sufficient to support a finding of recklessness because a "defendant acts recklessly when 'his conduct creates an unreasonable risk of physical harm to another [and] such risk is substantially greater than that which is necessary to make his conduct negligent.'"  See Shelton v. Gure, No. 19-cv-00843, 2019 WL 4168868, at *2 (M.D. Pa. Sept. 3, 2019) (quoting Phillips v. Cricket Lighters, 883 A.2d 439, 445 (Pa. 2005)).  In his complaint, Plaintiff maintains that Defendants NSRC and NSC's "negligence, carelessness, and/or recklessness" consisted of, but was not limited to, the following conduct:

> a. Owning, maintaining and permitting trains to operate o[n] the aforementioned railroad crossing when it was hazardous;
>
> b. Failing to equip the aforementioned railroad crossing with automatic crossing gates or automatic flashing lights to actively warn a motorists of an approaching train and the requirement to stop;
>
> c. Failing to provide a flagman at the aforementioned railroad crossing to warn motorists of the approach of a train at the crossing and the requirement to stop;

d. Failure to maintain the traffic and/or level crossing signals at the aforementioned train crossing;

e. Failure to ensure the crossing was clear prior to reversing the aforementioned train;

f. Failure to control traffic at the aforementioned train crossing;

g. Failure to communicate, alert, indicate, notify and/or warn motorists of the movement of the train over the aforementioned crossing;

h. Failure to promptly fix any defective and/or malfunctioning traffic and/or level crossing signals at the train crossing;

i. Failing to make proper observations;

j. Failing to take any action to avoid collision with Plaintiff;

k. Failing to exercise reasonable care and ordinary prudence by observing, inspecting, viewing and paying attention to the presence of motorists at the railroad crossing;

l. Failure to institute additional safety measures to remedy the defective and/or malfunctioning traffic and/or level crossing signals at the train crossing[;]

m. Failing to ensure workers operating the subject railway train were properly and adequately trained in accordance with applicable laws and standards;

n. Failing to yield the right of way;

o. Failing to take due note of the point and of position of Plaintiff [sic] at or near the railway crossing;

p. Failing to adequately train the operator and crew on the train;

q. Failing to have properly trained personnel inspect the condition of the train's control system;

r. Failing to have properly trained personnel inspect the condition of the railroad's train control system;

s. Violating various municipal ordinances and Statu[t]es of the Commonwealth of Pennsylvania pertaining to the operation of railway trains, right of way, yielding and railway crossings;

    t.        Failing to follow the Northeast Operating Rules Advisory Committee ("NORAC") Rules that govern how Defendant [] move[s] its trains across ungated roadways;

    u.        Failing to train its employees on the relevant NORAC Rules and how to apply them to ensure safety of the traveling public and its own employees while crossing roadways;

    v.        Failing to follow the NS Operating Rules that govern how Defendants reverse its trains;

    w.        Knowing that ungated, unlit crossing where this subject crash occurred was dangerous and recklessly and outrageously ignored the danger.

See (id. at 14–16 ¶ 42, 18–20 ¶ 53).[11]

Here, Plaintiff asserts that Defendants operated the train in violation of state law and other regulations, did not institute appropriate safety measures, failed to gate and light the crossing, and failed to properly train its operators, resulting in the injuries described supra. Accordingly, Plaintiff's allegations permit the inference of punitive damages because Plaintiff alleges that Defendants failed to ensure the safety of the Railroad Crossing under the applicable regulations and through training of John Doe Conductors #1–10.  See Banayan v. Feldpausch, No. 22-cv-00264, 2022 WL 1673448, at *2 (M.D. Pa. May 25, 2022) (finding that similar allegations concerning violation of regulations and failure to train operator permit the inference of punitive damages); Delamarter v. Couglar, No. 16-cv-00665, 2016 WL 3951663, at *2 (M.D. Pa. July 21, 2016) (stating that an alleged violation of safety regulations, "coupled with allegations of a conscious disregard for the safety and rights of others, suffices to properly assert a claim for punitive damages").  Such allegations, at this stage of litigation, are sufficient to plead claims for negligence that could plausibly support punitive damages.  See Shelton, 2019 WL 4168868, at *2 (finding an allegation of recklessness sufficient to preserve

---

[11] Plaintiff avers that John Doe Conductors #1–10 also engaged in similar conduct. See (Doc. No. 1-1 at 20–22 ¶ 56).

a punitive damages claim on a motion to dismiss); Goodfellow v. Camp Netimus, Inc., No. 16-cv-01521, 2017 WL 1738398, at *9 (M.D. Pa. May 4, 2017) (holding that allegations of recklessness sufficiently state a claim for punitive damages to survive a motion to dismiss); Austin v. Nugent, No. 16-cv-01567, 2016 WL 7048994, at *8 (M.D. Pa. Dec. 5, 2016) (finding that allegations of "reckless, careless conduct . . . would be enough to state a 'plausible' claim for punitive damages"); Ortiz v. Porte Reve Transp., Inc., No. 15-cv-00958, 2015 WL 4078873, at *4 (M.D. Pa. July 6, 2015) (stating that "the motion to dismiss stage is not the appropriate time to differentiate between negligent and reckless conduct").[12]

Further, it would be premature to dismiss Plaintiff's punitive damage claim at this time "because the question of whether punitive damages are proper often turns on the defendants' state of mind." See Harvell v. Brumberger, No. 19-cv-02124, 2020 WL 6947693, at *8 (M.D. Pa. Nov. 4, 2020), report and recommendation adopted, 2020 WL 6946575 (M.D. Pa. Nov. 25, 2020) (stating that, although defendants in motor vehicle accident cases "often invite courts to dismiss [] punitive damage claims," these invitations "are rarely embraced by the courts" and "courts routinely deny requests to dismiss punitive damages claims in motor vehicle accident cases at the outset of litigation"); C.M. by and through McMillen v. Am. Honda Motor Co., No. 23-cv-00119, 2024 WL 1382760, at *6 (W.D. Pa. Apr. 1, 2024) (observing that "[c]ourts in this circuit have routinely found that, because whether punitive damages are appropriate involves factual determinations that are best made with the benefit of discovery, dismissing punitive damages claims on a 12(b)(6) motion is premature"); Hutchison, 870 A.2d at 770 (holding that

---

[12] As to Defendants' request that the Court strike allegations of "recklessness," "reckless conduct," and "outrageous conduct" from Plaintiff's complaint, the Court will decline to strike these allegations because "[r]eckless conduct is the factual characterization of the events that took place giving rise to the negligence action; it is not a claim in itself that the court can dismiss." See Austin, 2016 WL 7048994, at *7.

the "state of mind of the actor is vital" when assessing whether punitive damages "are appropriate for torts sounding in negligence when the conduct goes beyond mere negligence"); Feld, 485 A.2d at 748 (stating that when assessing punitive damages, "[t]he state of mind of the actor is vital"). "Although facts may later prove at most that [D]efendants were merely negligent," discovery is needed to investigate the state of mind of Defendants' agents. See Young v. Westfall, No. 4:06-cv-2325, 2007 WL 675182, at *2 (M.D. Pa. Mar. 1, 2007) (noting that "[a]lthough the facts may later prove at most that defendants were merely negligent, discovery is necessary to help make this determination"); Austin, 2016 WL 7048994, at *8 (stating that "this is the very purpose of discovery," and that discovery is "necessary to determine whether the defendant's actions rose to the level of outrageous conduct warranting punitive damages").

The Court notes that Plaintiff will ultimately have to prove that Defendants engaged in behavior beyond mere negligence and that they possessed a "subjective appreciation of the risk of harm," see Hutchison, 870 A.2d at 772, but Plaintiff does not yet bear that burden at this stage of the proceedings. Therefore, the Court will allow Plaintiff to maintain his request for punitive damages against Defendants and deny Defendants' motion.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Defendants' motion to dismiss Plaintiff's claim for punitive damages. An appropriate Order follows.

s/ Yvette Kane<br>
Yvette Kane, District Judge<br>
United States District Court<br>
Middle District of Pennsylvania